# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JOE DON WEATHERLY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-387-SPS |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Joe Don Weatherly requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

The claimant was born November 4, 1957, and was fifty-six years old at the time of the most recent administrative hearing (Tr. 117, 377). He has between a sixth and eighth grade education,[2] and has worked as an ammunition assembly laborer and forklift operator (Tr. 29, 147, 226, 378, 400). The claimant alleges that he has been unable to work since April 30, 2008, due to chronic obstructive pulmonary disease (COPD), anxiety, depression, and congestive heart failure (Tr. 142).

**Procedural History**

On November 9, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Osly Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 15, 2011 (Tr. 14-23). The Appeals Council denied review, but this Court reversed the decision of the Commissioner in Case No. CIV-12-157-KEW and remanded to the ALJ with instructions to properly consider *all* the medical evidence in the record (Tr. 424-36). In the meantime, the claimant filed subsequent applications for benefits and was found disabled as of February 16, 2011 (Tr. 348). On remand, ALJ Doug Gabbard, II, conducted an administrative hearing and determined in a written opinion dated July 8,

---

[2] Claimant reported on his Disability Report and to Dr. Ward that he completed eighth grade (Tr. 147, 226). The claimant testified at the December 16, 2010, hearing that he began, but did not complete eighth grade, and testified at the May 8, 2014 hearing that he began, but did not complete seventh grade (Tr. 29, 378). The claimant's representative initially reported that the claimant completed seventh grade, but later reported he completed the sixth grade (Tr. 216, 550).

2014, that, for the closed period of April 30, 2008, through February 15, 2011, the claimant was not disabled (Tr. 348-65). ALJ Gabbard's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.984(d), 416.1484(d).

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that from April 30, 2008, through February 15, 2011, the claimant had the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and could stand/walk/sit for 6 hours in an 8-hour workday; however, he must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants, and must avoid extreme heat (Tr. 355). Due to psychologically based symptoms, the ALJ further found the claimant could perform semi-skilled work, which he defined as work that requires understanding, remembering, and carrying out some detailed skills, but did not require doing more complex work duties, where interpersonal contact with supervisors and co-workers was on a superficial work basis and contact with the public was occasional (Tr. 355). Additionally, the ALJ found the claimant could attend and concentrate for extended periods with normal work breaks and could adapt to work situations (Tr. 355). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, small products assembler, housekeeper/cleaner, and conveyor line bakery worker (Tr. 364).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the medical evidence in the record. Specifically, he asserts the ALJ failed to properly account for the opinions of two of his treating physicians, as well as the various Global Assessment of Functioning (GAF) scores contained in the record. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found that from April 30, 2008, through February 15, 2011, the claimant had the severe impairments of chronic obstructive pulmonary disease (COPD), affective mood disorder, and substance abuse disorder, as well as the nonsevere impairments of congestive heart failure, fatigue, and insomnia (Tr. 351-52). The medical records related to the claimant's mental impairments reveal that his family doctor prescribed an antianxiety medication on December 3, 2007, which he refilled on March 27, 2008, after the claimant reported feeling better (Tr. 221-22). The claimant did not receive any further mental health treatment until June 21, 2010, when he presented to the Carl Albert Community Mental Health Center and reported intense anxiety, shortness of breath, and a feeling of impending doom (Tr. 316-319). Advanced Practice Registered Nurse Cindy Baugh noted the claimant was alert and oriented with a slightly anxious mood and an expressive affect (Tr. 317). Ms. Baugh diagnosed the claimant with panic disorder without agoraphobia and depressive disorder due to medical illness and assigned a current GAF score of 42 and a past GAF of 60 (Tr. 318). Dr. William Mings also examined the claimant that day and noted his mood and affect were mildly anxious (Tr. 312-13). Dr. Mings diagnosed the claimant with anxiety disorder not otherwise specified

and mood disorder not otherwise specified, assigned a GAF score of 50, and began titrating antianxiety medications, noting the claimant's primary problem was stress/anxiety related to end stage COPD (Tr. 312-13). At a follow up appointment on November 8, 2010, the claimant reported an improvement in his mood and anxiety with his medications, and Dr. Mings noted the claimant's affect was calm (Tr. 331).

State reviewing physician Dr. Dorothy Millican-Wynn completed a Psychiatric Review Technique form on March 23, 2010 (Tr. 248-61). Dr. Millican-Wynn found that the claimant's mental impairments consisted of depression not otherwise specified and alcohol dependence (Tr.251, 256). As a result, Dr. Millican-Wynn found that the claimant was moderately impaired in the functional categories of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 212). Dr. Millican-Wynn also completed a Mental RFC Assessment and found that the claimant was moderately limited in his ability to understand, remember, and carry out detailed instructions and in his ability to interact appropriately with the general public (Tr. 262-63). Dr. Millican-Wynn concluded that the claimant could perform simple and some complex tasks, could relate to others on a superficial work basis, and could adapt to a work situation (Tr. 264).

Dr. Mings also provided a Medical Source Statement (MSS) regarding the claimant's ability to perform unskilled work, dated January 31, 2011 (Tr. 334-35). He opined that the claimant could not respond appropriately to supervision, co-workers, or work situations; could not handle changes or stress in a routine work setting; and could not maintain his concentration and attention for extended periods of time (Tr. 335). Dr.

Mings further opined that the claimant's impairments would require him to miss 3 or more days of work per month and to take unscheduled breaks during an 8-hour workday (Tr. 335). Dr. Mings concluded that the claimant could not attend employment on a sustained basis (Tr. 335).

On August 24, 2011, Dr. Teresa Farrara completed a MSS regarding the claimant's mental residual functional capacity, and stated that her opinion was for a period beginning in December 2007 (Tr. 340-44). She also stated other providers in the clinic had treated the claimant since June 2010, but that she examined him on June 14, 2011, and on August 24, 2011; however, the record does not contain any treatment notes from Dr. Farrara (Tr. 340). She assigned a current and highest past GAF score of 42 (Tr. 340). Additionally, Dr. Farrara found numerous activities that the claimant could not perform in a regular work setting, including maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress (Tr. 342-43). Dr. Farrara further noted numerous activities that the claimant could not perform independently, appropriately, and effectively on a sustained basis in a regular work setting, including maintain attention for a two hour segment; accept instructions and respond appropriately to criticism from others; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; understand, remember, and

carry out detailed instructions; and interact appropriately with the general public (Tr. 342-43). She opined that the claimant would be absent from work more than 4 days per month and that he could not maintain a normal work schedule (Tr. 342, 344).

At the most recent administrative hearing on May 8, 2014, the claimant testified that COPD was the main reason he couldn't work (Tr. 385). He further testified that during the closed period of disability, he was receiving mental health treatment for anxiety and panic attacks, that his COPD triggered his panic attacks, that his panic attacks seemed never ending, and that he also experienced depression (Tr. 391-92). Additionally, he stated he began having memory problems during the relevant time period (Tr. 393).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony from both hearings as well as the medical evidence. He noted Dr. Mings was the claimant's treating and prescribing physician and found Dr. Mings' MSS not fully supported by and inconsistent with the medical evidence as a whole, noting that no treatment notes (including Dr. Mings' own notes) and/or clinical or diagnostic testing supported his opinion; that Dr. Mings only briefly treated the claimant; and that he did not submit any reports showing significant abnormalities consistent with disability; thus, the ALJ gave Dr. Mings' opinion diminished weight (Tr. 360). Similarly, the ALJ found Dr. Farrara's opinion not supported by and inconsistent with the medical evidence as a whole, noting several inconsistencies with Dr. Mings' treatment notes and diagnoses; that her opinion applied to a time 2.5 years before the claimant's initial mental health treatment, and during which the claimant's earnings were highest; that there was no

evidence she treated the claimant prior to completing the MSS; that her opinion was inconsistent with the claimant's own report regarding his ability to get along with others; and that her diagnoses and GAF scores were similar to those assessed before the claimant began medication. He therefore gave Dr. Farrara's opinion little weight (Tr. 360-61). As to the GAF scores, the ALJ explained the use of GAF scores in detail and noted they may indicate problems unrelated to the ability to hold a job (Tr. 361-62). More importantly, he specifically discredited: (i) Ms. Baugh's GAF score because she assigned it when the claimant first presented for mental health treatment, and because she did not refer him for an emergency evaluation, noting 19 days lapsed before the claimant consulted with a psychiatrist, and (ii) Dr. Farrara's GAF score because it was lower than Dr. Mings' after three office visits (Tr. 362). The ALJ then noted the mental status examinations were basically normal and that the claimant's treatment had been infrequent and conservative (Tr. 362).

The claimant first contends that the ALJ failed to properly analyze the opinions of both Dr. Mings and Dr. Farrara. Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to

controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 [quotation omitted].

In this case, the ALJ adequately discussed and analyzed each of the opinions contained in the records. His findings, discussed above, indicate that he considered each of these opinions in turn and gave reasons for adopting or not adopting the limitations described in each of the opinions. Additionally, although the ALJ questioned whether Dr. Farrara was a treating physician, he nonetheless gave her the benefit of the doubt and analyzed her opinion as if she were. After a thorough review, the ALJ's opinion was sufficiently clear for the Court to determine the weight he gave to Dr. Mings' and Dr.

Farrara's opinions, as well as sufficient reasons for the weight assigned to each. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted]. Accordingly, he did not commit error in failing to include further limitations for the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The claimant next contends that the ALJ erred in his analysis of the various GAF scores contained in the record. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . does suggest an inability to keep a job," *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004), *citing Oslin*, 69 Fed. Appx. at 947. Accordingly, a GAF score standing alone, without any further narrative explanation, does not necessarily evidence an impairment that severely interferes with an ability to perform basic work activities. *Zachary v. Barnhart,* 94 Fed. Appx. 817, 819 (10th Cir. 2004). The ALJ's analysis of the claimant's GAF scores, set forth above, reflects he thoroughly considered each of the claimant's GAF scores. To the extent the claimant again challenges the ALJ's weighing of the treating physicians' opinions, it fails for the same reasons stated above. Here, the ALJ properly considered, and ultimately rejected, these scores. Furthermore, the GAF score assigned by Ms. Baugh is an opinion of a provider who is not an acceptable medical source, see 20 C.F.R.

§§ 404.1513(a), 416.913(a), and thus cannot, by itself, establish a medically determinable impairment or constitute a medical opinion. *Frantz v. Astrue,* 509 F.3d 1299, 1301 (10th Cir. 2007). The ALJ not only mentioned the negative GAF scores in the record, including Ms. Baugh's score, he also discussed reasons why they should be discredited; thus, there is no error.

This is not a case where the ALJ ignored GAF scores or medical opinions; rather, he considered this evidence in light of all of the other evidence before him. *See Petree v. Astrue,* 260 Fed. Appx. 33, 42 (10th Cir. 2007) ("[A] low GAF score does not alone determine disability, but it is instead a piece of evidence to be considered with the rest of the record.") Furthermore, the claimant does not point to any limitations in the treatment notes that the ALJ failed to consider and account for in the RFC assessment. The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. The ALJ specifically noted every medical and non-medical record available in this case, *and still concluded* that he could work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir. 2004).

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**